**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PAULETTE HYNEMAN** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.: 23-cv-3855** |
| **v.** | ) | |
| | ) | |
| **FORD MOTOR COMPANY,** | ) | |
| | ) | **Jury Trial Demanded** |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

## COMPLAINT

Plaintiff, Paulette Hyneman, by her attorneys, Keith L. Hunt and Delaney A. Hunt of Hunt Law, P.C. and complains against Defendant Ford Motor Company as follows:

**I.**
## NATURE OF THE ACTION

1.     This is an action for declaratory and injunctive relief and for damages against the Defendant to enforce the Plaintiff's rights to be free of gender discrimination, sexual harassment and retaliation in the workplace and for damages caused to Plaintiff and to redress the deprivation of the Plaintiff's rights secured by Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e *et seq.*)("Title VII"), 42 U.S.C. § 1981 and for state law causes of action.

## THE PARTIES

2.     The Plaintiff, Paulette Hyneman ("Hyneman"), was at all relevant times a citizen and resident of Glenwood, Illinois and resides within this judicial district.

3.      At all relevant times from August 2012 until her termination in April 2021, Plaintiff was employed by Ford Motor Company at its Chicago Assembly Plant, most recently as Electrician Apprentice.

4.      Defendant Ford Motor Company operates an automotive assembly plant, located at 12600 South Torrance Avenue in Chicago, Illinois and resides in this judicial district.

5.      During times relevant to this Complaint, Plaintiff worked at Defendant Ford's Chicago Assembly Plant and within this judicial district.

6.      At all times relevant, Ford employed more than fifteen (15) employees.

7.      Ford is an "employer" within the meaning of Title VII (42 U.S.C. § 2000e-(b)) and under the Illinois Human Rights Act (775 ILCS 5/1-101, *et seq.*).

## JURISDICTION AND VENUE

8.      Jurisdiction over the Plaintiff's federal law claims exists pursuant to 28 U.S.C. § 1331 which involve Federal Questions under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, *et seq.*).

9.      The Court has jurisdiction over the Parties and the subject matter.

10.     This Court has supplemental jurisdiction over Plaintiff's state law gender violence claims under 28 U.S.C. 1367.

11.     Venue is appropriate in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b)(2) as the unlawful employment practices stated in this Complaint were, in whole or in part, committed within the Northern District of Illinois.

12.     Venue further lies within this judicial district under 28 U.S.C. § 1391(c), as Defendant Ford Motor Company does business in this judicial district, including that it operates at least three (3) plants, including the Chicago Assembly Plant, in this judicial district.

## BACKGROUND

13.     Plaintiff complains about continuous sexual harassment and gender discrimination she experienced while employed at Ford and for being retaliated against after she complained.

14.     Sexual harassment, gender discrimination and retaliation have long been widely known problems for women working within the Ford Chicago Assembly Plant.

15.     In 1995, nine people sued Ford for sexual harassment, sex discrimination, race discrimination, assault, battery intentional infliction of emotional distress and negligent retention in *Rivera v. Ford Motor Company*, No. 95-CV-2990 in the United States District Court for the Northern District of Illinois.

16.     In 1997, fourteen (14) women filed a class action lawsuit against Ford Motor Company in a case known as *Warnell v. Ford Motor Company*, No. 98-CV-1503 in the United States District Court for the Northern District of Illinois.

17.     The EEOC investigated Ford's Chicago Assembly Plant in 1994-1995 and again in 1998. As a result of those investigations, the EEOC issued findings in the form of a Determination which states:

> I have determined that the evidence obtained in the investigation establishes reasonable cause to believe that a Class of female employees at Ford's Chicago area manufacturing facilities, including the Charging Party, has been subjected to sexual harassment by managers and non-managers. The women have been called sexually degrading names such as bitches, whores and

offensive references to female genitalia, as well as being subjected to Plaintiff's profanity. They have been physically touched, grabbed and groped, and have had body parts massaged without their consent. They have had to endure sexual comments and innuendos including suggestive references to female body parts and their functions. In addition, the women have been subjected to sexually explicit graffiti, including drawings of male and female genitalia with sexual terms and, at times, references to specific named women throughout the facilities. The presence of Plaintiff's pornographic materials such as calendars and Plaintiff's pictures of nude women also contributes to the hostile and sexually offensive environment.

18.    In 1999, the EEOC attempted to reach a settlement with Ford requiring Ford to pay $7.5 million toward training and to create a fund to compensate victims.

19.    In 1999, The United States District Court for the Northern District of Illinois certified a class of women in the *Warnell case.*

20.    In 2000, Ford agreed to settle the *Warnell* class case which required Ford to pay Nine Million Dollars ($9,000,000) into a settlement fund, in addition to paying up to Three Million Dollars ($3,000,000) in attorneys fees and also requiring Ford to be subject to on-site EEOC monitoring  for a period of three (3) years.

21.    In 2014, four (4) women filed a proposed class action and were joined by twenty-nine (29) additional female present or former employees. *Van v. Ford Motor Company*, No. 14 C 8708.

22.    The *Van* plaintiffs sued Ford for, among other things, sexual harassment, sex discrimination, race discrimination, assault, battery and intentional infliction of emotional distress and for retaliation they experienced from Ford when they reported these problems.

23.    In 2017, the EEOC reached a settlement with Ford requiring Ford to pay up to 10.125 million dollars to compensate victims of sexual harassment, gender and race discrimination.

4

24.     In August 2017, the Equal Employment Opportunity Commission announced a press release that stated in part:

> Ford Motor Company has agreed to pay up to $10.125 million to settle sex and race harassment for a group of individuals which was investigated by the U.S. Equal Employment Opportunity Commission (EEOC) at two Ford plants, the federal agency announced today.
>
> In its investigation, the EEOC found reasonable cause to believe that personnel at two Ford facilities in the Chicago area, the Chicago Assembly Plant and the Chicago Stamping Plant, had subjected female and African-American employees to sexual and racial harassment. The EEOC also found that the company retaliated against employees who complained about the harassment or discrimination.

25.     The 2017 EEOC settlement was insufficient, the fund was quickly depleted and it did not sufficiently remedy ongoing discrimination and retaliation at Ford's Chicago Assembly Plant.

26.     In 2020, six more women sued Ford for sexual harassment and other claims in *Boroughs v. Ford Motor Company* in the Northern District of Illinois (Case No. 20-cv-2727).

27.     With respect to many of the women who worked in the Chicago Assembly Plant alongside the Plaintiff, the EEOC again issued for-cause determinations against Ford after investigating sexual harassment, discrimination and retaliation allegations.

28.     Ford is a recidivist offender that willfully ignored the issues and evidence raised in prior litigation and EEOC findings and has failed to take measures to eradicate known discrimination and harassment from the workplace.

29.     Ford knowingly allowed sexual harassers, molesters and sex offenders to remain in the workplace and repeat heinous acts of sexual harassment on Ford's female employees.

30.     Despite numerous complaints, lawsuits and findings by the federal agency that sexual harassment and sex discrimination were rampant problems at the Chicago Assembly Plant, Ford failed to adequately remedy the hostile workplace environment.

31.     Ford engaged in a pattern and practice of discrimination, harassment and retaliation and the Plaintiff and other female employees and workers in the Chicago Assembly Plant have been subjected to harassment, discrimination and a hostile working environment including (but was not limited to):

    a.  Offensive and unwanted touching, groping and sexual assault;

    b.  Unwelcomed and unwanted sexual advances;

    c.  Requests for sexual favors;

    d.  Being subjected to comments or offers of sexual contact or males stating what they could or would like to do to Plaintiff or other women;

    e.  Being subjected to jeers, lewd comments, sexual suggestions, cat- calls, whistles and the like;

    e.  Being stared at by male employees who were focused on certain parts of plaintiff's body and/or "elevator eyes";

    f.  Sexual and explicit imagery and graffiti;

    g.  Sex in the parking lot or in the plant and/or reminders of sex, including used condoms and condom wrappers;

    h.  By having to endure women being referred to with derogatory names, including "fresh meat", "bitch", "hoe" and the like;

    i.  By being ridiculed for having complained, informed by Labor Relations representatives that their complaints were not believable and/or being admonished not to complain in the future and/or not to use the harassment hotline.

    j.  Denying women promotional opportunities based on their gender .

**THE COWART-BACON INCIDENT**

32.     During her employment at Ford, Plaintiff witnessed an altercation between two Ford employees, William Cowart and Jeff Bacon.

33.     During the Cowart-Bacon incident, Bacon was alleged to have punched Cowart and in response Cowart was alleged to have shot Bacon.

34.     Ford subsequently fired Cowart who filed a grievance contesting his termination.

35.     Johanna Shay (Ford's Manager of Arbitration & Wage Administration) and Stacey Washington (Ford Labor Relations Supervisor) asked Plaintiff to testify on Ford's behalf during the Cowart arbitration and to state that "she did not feel comfortable working with Cowart" since he had a gun and shot Bacon.

36.     Plaintiff indicated that she did not agree with what Ford wanted her to testify and that she would not lie for Ford.

37.     Shay and Washington expressed their displeasure at Plaintiff's refusal to support Ford's version of the events.

38.     Cowart ultimately prevailed in the arbitration and was allowed to return to work.


**PLAINTIFF ENDURED UNLAWFUL SEXUAL HARASSMENT**

39.     Plaintiff is aware of Ford employees having sex in cars, in the workplace parking lot and at the union hall.

40.     Women, including Plaintiff, were repeatedly subjected to offensive and unwanted pictures of penises, nude imagery and/or men watching sexual or pornographic images on their cell phones at work.

7

41.     Plaintiff has suffered severe and pervasive sexual harassment from Ford supervisors and co-workers.

42.     Throughout the course of her employment at Ford, Plaintiff was sexually harassed by managers, supervisors and co-workers, including but not limited to:

    a.  Supervisor Buck Owens who subjected Plaintiff to unwelcome and unwanted:

        i.   touching, grabbing and groping;

        ii.  unsolicited offers to take Plaintiff shopping in exchange for sex;

        iii. calling Plaintiff pet names such as "little britches" and

        iv.  engaged in other unwanted behavior;

        v.   when Plaintiff refused his advances Owens would move Plaintiff to more difficult jobs within the plant;

    b.  Supervisor Jerardo Harris subjected Plaintiff to unwelcome and unwanted sexual advances and when Plaintiff refused, Harris threatened to write up Plaintiff and to have her terminated;

    c.  Co-worker Torry Burrel subjected Plaintiff to unwelcome and unwanted:

        i.   touching, grabbing and groping;

        ii.  forcibly kissed her;

        iii. When Plaintiff complained, Burrel had a friend (supervisor) write Plaintiff up and had his wife, also a supervisor, subjected Plaintiff to increased scrutiny regarding her job performance.

8

    d.  George Fields, and other male employees would:

        i.   expose their penis to Plaintiff;

        ii.  make lewd gestures by grabbing their crotch indicating to Plaintiff that she should "come and get some of this";

        iii.  on one occasion when Plaintiff was in the lunchroom Fields entered, turned off the lights and grabbed Plaintiff from behind, grabbing her neck and pushed her onto the table, putting Plaintiff in imminent fear of being raped or enduring other serious bodily injury;

43.    During Plaintiff's apprenticeship, Plaintiff reported to Sean Brown who ran the Joint Apprenticeship program at Ford.

44.    Sean Brown performed performance evaluations called "audits" to monitor and evaluate Plaintiff's performance.

45.    Sean Brown had the ability to remove Plaintiff from the Apprenticeship program.

46.    Between March 2019 and June 2019, Sean Brown sexually harassed Plaintiff in one or more of the following ways:

    a.  Requests for sexual favors;

    b.  Unwelcome and Unwanted requests for dating and to have sex;

    c.  Unwelcome and unwanted touching in an offensive manner; and

    d.  By professing his love for Plaintiff;

    e.  By invading Plaintiff's personal space;

  f. By pressuring Plaintiff to engage in a relationship with him, telling Plaintiff that he had powerful friends in Ford's management and in the union;

  g. By punishing Plaintiff when she refused to give in to his unwanted and unwelcome demands for a relationship or sexual favors;

  h. By threatening to have Plaintiff removed from the apprenticeship program;

  i. By moving Plaintiff from department to department when she refused to accede to his sexual demands.

  j. By otherwise sexually harassing Plaintiff.

47. Plaintiff Supervisor Will Robinson also subjected Plaintiff to unwelcome and unwanted conduct of a sexual nature during December 2020 on multiple occasions including but not limited to:

  a. By exposing himself to Plaintiff;

  b. By forcing her to perform oral sex;

  c. By threatening her with termination if she did not accede to his demands;

  d. On one occasion in December 2020, Robinson came to Plaintiff's home uninvited, physically forcing her into her bedroom at which point he raped her.

  e. During this encounter while Plaintiff was crying and visibly upset, Robinson asked her if she was "okay" and when she responded she was not, he proceed to continue his sexual assault;

10

48.     At the time of Plaintiff's first encounter with Robinson in December 2020, Robinson told Plaintiff that he was just returning from "a little vacation" because a female employed through Ford's contracted cleaning service "tried reporting him for sexual harassment."

49.     Robinson told Plaintiff that when the female cleaning service employee went to Labor Relations, "they wanted to fire her" thereby threatening Plaintiff and letting Plaintiff know that if she complained she could meet a similar fate.

50.     Plaintiff did not consent to any of Robinson's sexually harassing conduct or to his sexual assaults.

51.     After Robinson sexually assaulted Plaintiff, she telephoned Robinson's girlfriend to complain about his conduct with the hope that the girlfriend would confront Robinson and put a stop to his conduct.

52.     In response to Plaintiff's telephone call, Robinson confronted Plaintiff in the workplace during working hours and punched her in the face.

53.     Robinson then called a co-worker requesting that she "pick me up before I get arrested."

54.     In January 2021, Supervisor/Management employee Ron Woods physically grabbed, groped and assaulted Plaintiff as she was leaving Labor Relations, having just finished complaining about Will Robinson.

55.     When Ron Woods grabbed the Plaintiff, she pushed away and asked "what is your name?"

56.     Woods responded "you will remember my name – its Ron Woods" as if to threaten and further intimidate plaintiff.

11

## WOMEN WERE SEXUALLY HARASSED AND/OR WERE VERBALLY ASSAULTED WHEN THEY COMPLAINED OR SOUGHT HELP

57.     When Plaintiff complained to Labor Relations regarding the Robinson incidents and was interviewed.

58.     Although Robinson was eventually terminated, Ford's stated reason was based its finding that Robinson and Plaintiff had engaged in a "consensual relationship" which Robinson failed to report in violation of Ford's policy that management employees report romantic relationship with subordinates.

59.     Ford did not terminate Robinson for sexually harassing Plaintiff.

60.     Ford did not terminate Robinson for sexually assaulting Plaintiff.

61.     Ford did not terminate Robinson for raping Plaintiff.

62.     Plaintiff was subsequently interviewed a second time regarding her complaints about Robinson.

63.     When Global Human Resources Representative Anthony Miller interrogated Plaintiff in January 2021, he was aggressive, accusatory and interviewed Plaintiff during her overnight shift when there was no union representation available, thereby denying her Weingarten rights.

64.     During Miller's interview, Plaintiff told Miller that she felt like she was the one being accused of wrongdoing and that she felt like he "was attacking her"; Miller responded "you're going to feel like that, because I'm good at what I do."

65.     Miller's interview lasted more than 5 to 6 hours.

66.     Miller's techniques caused the Plaintiff to have diarrhea several times during the interrogation.

67.     During Miller's interrogation, Miller accused Plaintiff of assaulting Robinson.

68.     Plaintiff denied assaulting Robinson.

69.     When Plaintiff denied assaulting Robinson, Miller threatened her, telling Plaintiff that they were going to continue the interrogation until the Plaintiff told Miller what he wanted to hear.

70.     Miller continued berating and accusing Plaintiff.

71.     Plaintiff asked for breaks in the interrogation and indicated that she needed water and had not eaten but Miller ignored Plaintiff's requests and denied her a break in the interrogation.

72.     UAW officials have engaged in sexual harassment and perpetuated the hostile workplace environment which the Plaintiff endured.

73.     UAW Building Chairman Coby Millender offensively hugged women, in a way which was uncomfortable and lingering. Millender even kissed other women on the lips without their consent.

74.     UAW Representative John Harris made sexual comments to women who tried to complain about ongoing discrimination and sexual harassment.

75.     John Harris made sexual advances toward women when they tried to complain to him about sexual harassment and discrimination, including telling them that he was in an "open relationship" with his wife and that his wife allows him to have sex with other women.

76.     Plaintiff's experiences were offensive and unwanted.

13

77.     Plaintiff complained about sexually harassing behavior and hostile workplace environment to Supervisors, Ford's sexual harassment hotline and to Ford's Labor Relations Department.

78.     Ford failed to promptly remedy Plaintiff's and other females' complaints.

79.     Instead of remedying Plaintiff' Complaints, Ford retaliated against the Plaintiff.

80.     For example, Ford was slow to act on Plaintiff's complaints about a co-worker, Sean Brown, allowing Brown to continue tormenting Plaintiff for several months after she complained.

81.     When Ford finally acted on Plaintiff's complaint regarding Sean Brown, Brown had already engaged in acts of continued harassment and retaliation against Plaintiff.

82.     Among Brown's continuing acts of harassment and retaliation after Plaintiff complained about his conduct and behavior, Brown contacted Prairie State College where Plaintiff was taking courses as an Electrician Apprentice and requested that the school change her grade to an "F" so that she would fail her course.

83.     Brown undertook these efforts to have Plaintiff's grade changed in retaliation for her having complained about Brown's harassment and discrimination.

84.     Although Ford subsequently terminated Sean Brown, it then allowed Brown to return to the workplace.

85.     Plaintiff has suffered damages, including lost wages and emotional distress as a result of having to endure this offensive, unwanted workplace environment.

**PLAINTIFF'S TERMINATION**

86.    In June 2021, Ford terminated Plaintiff in retaliation for her complaints of sexual harassment, discrimination and retaliation, and because she refused to testify as Ford wanted her to in Cowart's arbitration, alleging that Plaintiff had assaulted Will Robinson when she attempted to defend herself.

87.    At no time did Plaintiff assault, hit or strike Will Robinson.

88.    Stacey Washington, the Labor Relations Supervisor who unsuccessfully attempted to have Plaintiff perjure herself in the Cowart arbitration and who therefore held a grudge against Plaintiff, was involved in the decision to terminate Plaintiff.

89.    Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and Illinois Department of Human Rights ("IDHR"). (Ex. A).

90.    Plaintiff filed this lawsuit within 90 days of her receipt of a Right to Sue letter (Ex. B) on her Charge.

**COUNT I**
**VIOLATION OF TITLE VII-SEXUAL HARASSMENT**

91.    Plaintiff adopts, realleges and incorporates by reference all of paragraphs 1-90 of this Complaint and in her Charge of discrimination (Ex. A) as and for this paragraph.

92.    This claim is brought under Title VII, 42 U.S.C. § 2000e, *et seq.*

93.    Ford constitutes an "employer" within the meaning of Title VII (42 U.S.C. § 2000e-(b)), based on its engagement in an industry affecting commerce and its employment of fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

94.     Plaintiff was at all relevant times members of a protected class based upon her gender (female).

95.     During Plaintiff's employment, Plaintiff each met Ford's reasonable and legitimate work-related expectations.

96.     At all relevant times Ford had a custom, policy and/or practice to allow employees and supervisors to discriminate against and to sexually harass female employees.

97.     Defendant's conduct violated Plaintiff's right to be free of sexual harassment in the workplace in violation of Title VII.

98.     Other supervisors and employees sexually harassed Plaintiff and/or allowed it to occur.

99.     During the course of her employment with Ford, Plaintiff was forced to endure a working environment hostile toward women, including unwelcome or unwanted sexual advances, touching, groping, requests for sexual favors, sexual comments and gestures.

100.    Male supervisors sexually harassed Plaintiff and similarly situated female employees and subjected them to a hostile workplace environment, including but not limited to the ways described elsewhere in this Complaint, in Plaintiff's attached EEOC Charge, and in one or more of the following ways:

        a.  making unwanted sexual advances;

        b.  making comments of a sexual and offensive nature;

        c.  touching Plaintiff in a sexual or offensive manner;

        d.  exposing Plaintiff to sexually explicit imagery, used condoms and graffiti.

16

101.    The conduct which Plaintiff experienced was offensive and unwanted.

102.    The sexual harassment about which Plaintiff complained was severe and pervasive.

103.    All the foregoing conduct on the part of Defendant was offensive to Plaintiff and would be offensive to any reasonable person.

104.    Defendant knew about rampant sexual harassment and numerous complaints but failed to take sufficient measures to protect Plaintiff and other women from being sexually harassed.

105.    Plaintiff complained about the widespread discriminatory and harassing conduct she experienced at Ford.

106.    Defendant failed to promptly remedy sexual harassment in Plaintiff's workplace even after she complained.

107.    Plaintiff was denied overtime and holiday work opportunities as a result of her refusal to submit to harassment and in retaliation for her complaints.

108.    Instead of remedying Plaintiff's sexually harassing workplace environment, Defendant terminated Plaintiff.

109.    As a direct and proximate result of the foregoing, Plaintiff have suffered lost wages, embarrassment, humiliation, emotional distress, and other forms of damage.

110.    Plaintiff damages are of an on-going and continuous nature.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully request that this Court:

    a.  Enter judgment in her favor and against Defendant Ford Motor
        Company on their Count I- Title VII- Sexual Harassment claim;

17

b. Enjoin the Defendant, its officers, agents, employees and anyone acting in concert therewith, from discriminating, harassing and retaliating against the Plaintiff;

c. Order that Ford Motor Company implement effective steps to eliminate and remediate sexual harassment and discrimination in its workplaces;

d. Order that Plaintiff be reinstated and/or promoted, if applicable, to an employment position similarly situated to that from which she was terminated after she complained about sexual harassment, along with commensurate salary, raises, insurance and pension benefits associated with that reinstatement and/or promotion;

e. Award the Plaintiff backpay;

f. Award Plaintiff front pay, if appropriate;

g. Award the Plaintiff actual damages;

h. Award Plaintiff compensatory damages;

i. Award Plaintiff punitive damages;

j. Award Plaintiff attorneys' fees pursuant to Title VII;

k. Award Plaintiff reasonable costs associated with bringing their claims;

l. Award Plaintiff prejudgment interest on any award of damages against the Defendant;

m. Award Plaintiff all other relief as the Court deems appropriate, equitable and just.

## COUNT II
## VIOLATION OF TITLE VII-GENDER DISCRIMINATION

111. Plaintiff adopts, realleges and incorporates by reference all of paragraphs 1-110 of this Complaint as and for this paragraph.

112. This claim is brought under Title VII, 42 U.S.C. § 2000e, *et seq.*

18

113.     Defendant's conduct violated Plaintiff's right to be free of discrimination in employment based on her gender in violation of Title VII.

114.     The discriminatory and sexually harassing behavior directed at Plaintiff was part of a custom, pattern and practice of unlawful harassment and discrimination against female employees at Ford.

115.     Similarly situated male employees have been treated more favorably than Plaintiff.

116.     Male workers were not required to allow male Supervisors engage them in sexual touching, harassment and/or sexual assault and/or rape as a condition of their employment.

117.     Plaintiff and other female employees have been subjected to discriminatory comments from supervisors and coworkers which have not been directed to male counterparts and which males are not required to endure as a condition of their employment.

118.     Male supervisors and coworkers subjected Plaintiff and other female employees to derogatory comments which are demeaning to women.

119.     Plaintiff's supervisors and co-workers intentionally discriminated against Plaintiff based on their gender by giving more favorable treatment to male employees and by sexually harassing the Plaintiff.

120.     Plaintiff was treated differently than her male counterparts based on her gender (female).

121.    As a direct and proximate result of the foregoing, Plaintiff have suffered embarrassment, humiliation, emotional distress, and other forms of damage of an on-going and continuous nature.

122.    Plaintiff complained about the above described discriminatory conduct.

123.    As a result of the foregoing, Plaintiff suffered damages.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully request that this Court:

    a. Enter judgment in their favor and against Defendant Ford Motor Company on their Count II - Title VII- Gender Discrimination claim;

    b. Enjoin the Defendant, its officers, agents, employees and anyone acting in concert therewith, from discriminating, harassing and retaliating against the Plaintiff;

    c. Order that Ford Motor Company implement effective steps to eliminate and remediate sexual harassment and discrimination in its workplaces;

    d. Order that Plaintiff be reinstated and/or promoted, if applicable, to an employment position similarly situated to that from which she was terminated after she complained about sexual harassment, along with commensurate salary, raises, insurance and pension benefits associated with that reinstatement and/or promotion;

    e. Award the Plaintiff backpay;

    f. Award Plaintiff front pay, if appropriate;

    g. Award the Plaintiff actual damages;

    h. Award Plaintiff compensatory damages;

    i. Award Plaintiff punitive damages;

    j. Award Plaintiff attorneys' fees pursuant to Title VII;

k.  Award Plaintiff their reasonable costs associated with bringing their claims;

l.  Award Plaintiff prejudgment interest on any award of damages against the Defendant;

m.  Award Plaintiff all other relief as the Court deems appropriate, equitable and just.

**COUNT III**
**VIOLATION OF TITLE VII-RETALIATION**

124.    Plaintiff adopts, realleges and incorporates by reference all of paragraphs 1-123 of this Complaint as and for this paragraph.

125.    Plaintiff complained about sexually harassing and discriminatory treatment against her based on her gender by both coworkers and supervisors.

126.    As a direct and proximate result of Plaintiff's complaining activities, the Defendant took materially adverse employment actions against the Plaintiff, including:

a.  Terminating her employment;

b.  Subjecting Plaintiff to increased workplace scrutiny by her supervisors and managers;

c.  Denying Plaintiff perks and benefits which have been permitted to similarly situated co-workers who did not complain;

d.   threatening Plaintiff with unwarranted discipline;

e.  Denying Plaintiff overtime and/or the opportunity to work holidays.

127.    The above identified actions have altered the terms and conditions of Plaintiff' employment and constitute materially adverse employment actions.

128.     Defendants took materially adverse employment actions against the Plaintiff.

21

129.    As a result of this conduct, Plaintiff suffered damages.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully request that this

Court:

a.  Enter judgment in their favor and against Defendant Ford Motor Company on their Count III - Title VII-Retaliation claim;

b.  Enjoin the Defendant, its officers, agents, employees and anyone acting in concert therewith, from discriminating, harassing and retaliating against the Plaintiff;

c.  Order that Ford Motor Company implement effective steps to eliminate and remediate sexual harassment and discrimination in its workplaces;

d.  Order that Plaintiff be reinstated and/or promoted, if applicable, to an employment position similarly situated to that from which she was terminated after she complained about sexual harassment, along with commensurate salary, raises, insurance and pension benefits associated with that reinstatement and/or promotion;

e.  Award the Plaintiff backpay;

f.  Award Plaintiff front pay, if appropriate;

g.  Award the Plaintiff actual damages;

h.  Award Plaintiff compensatory damages;

i.  Award Plaintiff punitive damages;

j.  Award Plaintiff attorneys' fees pursuant to Title VII;

k.  Award Plaintiff their reasonable costs associated with bringing their claims;

l.  Award Plaintiff prejudgment interest on any award of damages against the Defendant;

m.  Award Plaintiff all other relief as the Court deems appropriate, equitable and just.

22

**COUNT IV**
**VIOLATION OF THE ILLINOIS GENDER VIOLENCE ACT**

130.    Plaintiff adopts, realleges and incorporates by reference all of paragraphs 1-125 of this Complaint as and for this paragraph.

131.    The Illinois Gender Violence Act prohibits any battery committed at least in part on the basis of a person's sex or the threat of any such act.

132.    Ford constitutes a "person or persons perpetrating the gender-related violence" under the Illinois Gender Violence Act.

133.    Ford personally, through its management and its policies committed or encouraged the violent acts by its management as alleged by Plaintiff.

134.    Plaintiff has been assaulted by or battered by Ford's male management at its Chicago Assembly Plant while employed at Ford Motor Company between 2012 and the present.

135.    Male managers groped, touched and battered women or attempted to grope, touch or batter women.

136.    The above referenced batteries or threats were committed at least in part based on the Plaintiff's sex (female).

137.    Ford was aware of intentional, offensive touching occurring by its supervisors toward women, including the Plaintiff.

138.    Since at least 2012, Ford has received dozens of complaints by women at its Chicago Assembly Plant of unwelcome, unwanted, harmful or offensive touching or threatened touching.

23

139.    Ford failed and refused to discipline employees who committed batteries against women.

140.    These managers had authority to establish working conditions, make employment decisions and set policy over the plant and within their departments on behalf of Ford.

141.    In setting this policy, many of these managers took a position that by virtue of their supervisory authority at Ford, they "owned" female employees and could touch them, batter them and threaten them as they pleased.

142.    Ford has expressly or tacitly condoned the commission of intentional torts in the workplace.

143.    Ford's highest level supervisors, including Detroit-based Labor Relations Director, Jim Larese, have been informed of ongoing offensive touching and groping at Ford's Chicago plants.

144.    Instead of stopping ongoing batteries and assaults, Larese instructed then-UAW Building Chairman Grant Morton that "your people better stop complaining" and/or "you better get your people in line."

145.    Since 2012, Ford's actual policy was to permit and condone batteries and assaults in its Chicago Assembly Plant and to condone and protect the tortious activity of its assailants who committed such acts.

146.    The intentional assaults and batteries by management to Plaintiff are intentional torts committed as a result of Ford policy.

24

147.     Ford personally assisted in or personally encouraged the gender-related violence alleged in this Count.

148.     Plaintiff have suffered damages.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully request that this Court:

a.  Enter judgment in their favor and against Defendant Ford Motor Company on their Count IV – Illinois Gender Violence Act claim.

b.  Enjoin the Defendant, its officers, agents, employees and anyone acting in concert therewith, from discriminating, harassing and retaliating against the Plaintiff;

c.  Order that Ford Motor Company implement effective steps to eliminate and remediate gender discrimination in its workplaces;

d.  Order that Plaintiff be reinstated and/or promoted, if applicable, to an employment position similarly situated to that from which she was terminated after she complained about sexual harassment, along with commensurate salary, raises, insurance and pension benefits associated with that reinstatement and/or promotion;

e.  Award the Plaintiff backpay;

f.  Award Plaintiff front pay, if appropriate;

g.  Award the Plaintiff compensatory and actual damages, including for emotional distress;

h.  Award Plaintiff punitive damages;

i.  Award Plaintiff attorneys' fees pursuant to the Illinois Gender Violence Act;

j.  Award Plaintiff their reasonable costs associated with bringing their claims;

k.  Award Plaintiff prejudgment interest on any award of damages against the Defendant;

25

l.   Award Plaintiff all other relief as the Court deems appropriate, equitable and just.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully submitted,
HUNT LAW, P.C.


By:/s/ *Keith L. Hunt* (electronic signature)
    An Attorney for Plaintiff


Keith L. Hunt
Delaney A. Hunt
Hunt Law, P.C.
2275 Half Day Rd
Suite 126
Bannockburn, IL 60015
(312) 558-1300
khunt@huntpclaw.com
dhunt@huntpclaw.com